**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**EDWARD A. KIZER, JOHN J. RYAN, III, and DON HOWELL, on behalf of themselves and others similarly situated,**

**Plaintiffs,**

**v.**

**SHELBY COUNTY GOVERNMENT, A C WHARTON, individually and in his official capacity, SHELBY COUNTY CIVIL SERVICE MERIT BOARD, and OTIS JACKSON, JR., individually and in his official capacity,**

**Defendants.**

**Case No. 08-2570**

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court are the September 30, 2009, Cross-Motions for Summary Judgment of Plaintiffs Edward A. Kizer, John J. Ryan, and Don Howell and Defendants Shelby County Government, the Shelby County Civil Service Merit Board, Joe Ford in his official capacity as Shelby County Mayor, and Otis Jackson, Jr., individually and in his official capacity as Clerk of the Shelby County General Sessions Court. In an earlier order, this Court dismissed Plaintiffs' claims against former Shelby County Mayor A C Wharton in his individual capacity. See Kizer v. Shelby County Gov't, No. 08-2570, Dkt. No. 76, Order Granting in Part

and Denying in Part Defendants' Motion to Dismiss, at 18 (W.D. Tenn. July 9, 2009). Plaintiffs' suit, brought under 42 U.S.C. § 1983, alleges that Defendants terminated Plaintiffs without due process of law, in violation of the Constitution's Fourteenth Amendment. U.S. Const. amend XIV, § 1. For the following reasons, the Plaintiffs' Motion for Summary Judgment is DENIED, and the Defendants' Motion for Summary Judgment is GRANTED.

**I. Factual Background**

Unless otherwise stated, all facts recited in this order are undisputed for purposes of the pending Cross-Motions for Summary Judgment. In 1971, the Tennessee General Assembly enacted Chapter 110 of the Tennessee Private Acts (the "Act"), establishing the Tennessee Civil Service Merit System for employees of Shelby County, Tennessee. (Defendants' Statement of Undisputed Facts ¶ 1.) ("Defs.' Facts") The Act established Defendant Shelby County Civil Service Merit Board (the "Board") as the body charged with determining how each available county job should be classified under the Merit System. If the Board determines that a position is "classified," the Act requires that civil service protections apply to that position. (Defs.' Facts ¶¶ 1-2.) Shelby County must fill classified positions through open, competitive evaluations after advertising the job

openings for thirty days. (Id. ¶ 3.) Classified employees are not terminable at will. (Id. ¶ 2.)

Not all positions within Shelby County Government qualify for protection under the Act. The Board has determined that some county positions are "unclassified." Unclassified positions are commonly known as appointed positions. (Id. ¶ 4.) Shelby County's forty-three elected officials appoint people they choose to fill the unclassified positions. Unclassified positions do not require prior public notice or examination before the appointing officials may fill them. (Id. ¶ 5.) Because unclassified positions do not come within the Act's Civil Service protections, the employees in those positions are terminable at will. (Id.) Shelby County employees commonly refer to the termination of an unclassified employee as a "disappointment." (Id.) If a disappointed employee held a classified position before his or her appointment to an unclassified post, the employee may exercise "bump-back" rights to return to the protected civil service position following the disappointment. (Id. ¶ 6.)

Former Shelby County General Sessions Court Clerk Chris Turner appointed Plaintiff Kizer Administrator of the Clerk's Office on February 1, 2003. (Id. ¶ 16.) The Board categorized Kizer's position as unclassified, and Kizer did not obtain his position as Administrator through the merit selection process.

(Id. ¶ 17; see also Plaintiffs' Statement of Undisputed Facts ¶ 4.) ("Pls.' Facts") Kizer's job responsibilities included supervising forty-five employees; reviewing reports, including financial reports; and resolving any problems with the Clerk's Office that judges, lawyers, or citizens might have. (Defs.' Facts ¶ 18.) Kizer was also responsible for the day-to-day operations of the Clerk's Office and held weekly meetings with lower-level managers to ensure that staff productivity met Turner's stated goals. (Id. ¶ 19.)

Plaintiff Ryan began working for the Clerk's Office nearly thirty years ago. (Id. ¶ 24.) Although Ryan was initially a classified employee protected by the Act, in 1987 Ryan accepted an appointment to an unclassified position, "Manager B." (Id. ¶ 26.) Ryan worked as Manager B for approximately twenty-one years because successive Clerks reappointed him. (Id. ¶ 27-28.) Manager B's primary responsibility was to run the 24-hour division of the criminal section of the Clerk's Office. Ryan supervised three shifts of eight workers each and was on call twenty-four hours a day to address any issues that a supervisor could not handle. (Id. ¶ 28.) Under Turner, Ryan also managed the Clerk's Office collections department. (Id. ¶ 29.) In Ryan's words, his job was to "put out fires" that might arise from disputes involving bail-bonding companies or judges. (Id.; see also Ryan Dep., Dkt. No. 82, at 34.)

Plaintiff Howell joined the General Sessions Clerk's Office when Turner appointed him to serve as "Manager A" in September 1996. (Defs.' Facts ¶ 33.) As with Kizer's and Ryan's positions, the Board categorized Manager A as an unclassified job. (Id.) Howell replaced the prior Manager A, Camille Hubbard, whom Turner disappointed after his election as Clerk. (Id. ¶ 33.) Turner had Howell examine the Clerk's Office fee structure and make recommendations about how the office could become self sustaining. (Id. ¶¶ 34-35.) Howell also made budgetary recommendations and worked with a state committee in Nashville to revise Tennessee's court cost statutes. (Id. ¶ 35.) If Turner had special projects, he often assigned them to Howell. (Id. ¶ 34; see also Howell Dep., Dkt. No. 82, at 68.)

On August 8, 2008, Defendant Otis Jackson, Jr., defeated incumbent Turner in the general election for Shelby County General Sessions Court Clerk. (Defs.' Facts ¶ 10.) After his defeat, Turner, following established procedure, contacted Shelby County Human Resources Administrator Mike Lewis on August 12, 2008. (Id. ¶ 11.) Turner asked Lewis to perform a review of Plaintiffs' jobs and to recommend that the Board change their categorization from unclassified to classified. (Id.; see also Lewis Dep., Dkt. No. 83, Ex. 35.) Lewis asked Timothy Green to review preliminarily the status of Plaintiffs' positions. In performing his review, Green examined only the job descriptions

on file with the Clerk's Office. (Pls.' Facts ¶¶ 9, 11.) Based on his review of the job descriptions, Green preliminarily recommended, on August 14 or 15, 2008, that the Board consider changing Ryan's and Howell's job categorizations to classified. (Id. ¶¶ 10, 12.) Green did not recommend that Kizer's classification change. (Id. ¶ 10.)

Lewis wrote to Turner on August 25, 2008, requesting that Turner identify either 1) material changes in Plaintiffs' job responsibilities that would support their reclassification or 2) errors the Board had made in its original categorization of the positions as unclassified. (Defs.' Facts ¶ 12; see also Lewis Dep. Ex. 36.) Turner responded by letter dated August 27, 2008. Although Turner did not answer either of the two questions Lewis posed, Turner did argue that positions in other offices had recently been recategorized as classified. (Defs.' Facts ¶ 13; Lewis Dep. Ex. 37.) Turner also asked why Lewis' review was taking so long. (Defs.' Facts ¶ 13; Lewis Dep. Ex. 37.)

Before assuming office on September 1, 2008, Clerk-Elect Jackson met with Shelby County officials to obtain a list of all unclassified positions. (Defs.' Facts ¶ 14.) Jackson informed Kizer and Howell by letters dated August 26, 2008, that he would not reappoint them to their positions. (Pls.' Facts ¶ 5; Defs.' Facts ¶¶ 21, 26; Jackson Dep., Dkt. No. 83, Ex. 6, 8.) Kizer and Howell both chose to retire from Shelby County

Government and receive the benefits due them for their years of service. (Defs.' Facts ¶¶ 23, 38.) After assuming office, Jackson withdrew the pending request to recategorize Plaintiffs' positions as classified. (Pls.' Facts ¶ 37; Lewis Dep. Ex. 38.) Jackson then informed Ryan by letter dated September 10, 2008, that Jackson would not reappoint him to his position as Manager B. (Pls.' Facts ¶ 3; Defs.' Facts ¶ 30; Jackson Dep. Ex. 7.) Ryan, exercising his bump-back rights, returned to his prior classified position of Chief Principal Court Clerk. (Defs.' Facts ¶ 31.) Ryan has since received a promotion through the merit selection system to Community Services Organizer. (Id.)

Kizer filed suit on August 29, 2008, to contest his termination. Ryan and Howell later joined as Co-Plaintiffs. (See Amended Compl. at 1.) This Court has jurisdiction to adjudicate Plaintiffs' § 1983 suit under 28 U.S.C. § 1343(a)(3) and the general federal question jurisdiction established by 28 U.S.C. § 1331. Plaintiffs allege that Defendants deprived them of their jobs without due process of law through a policy of mislabeling positions as unclassified that should have been labeled classified, thereby removing the procedural protections of the Act. (Amended Compl. ¶ 50.)

This Court partially granted Defendants' Motion to Dismiss on July 9, 2008, dismissing claims against former Shelby County Mayor A C Wharton in his individual capacity. (Kizer, Dkt. No.

76, at 18.) The Court also dismissed Plaintiffs' claims based on alleged violations of the Tennessee Constitution and claims for punitive damages against Shelby County, the Board, and Wharton. (Id. at 18-19.) In a subsequent order, the Court denied Plaintiffs' Motion for Class Certification. Kizer v. Shelby County Gov't, Dkt. No. 78, Order Denying Plaintffs' Motion for Class Certification and Appointment of Class Counsel, at 2 (W.D. Tenn. Aug. 24, 2009).

Remaining before the Court are Plaintiffs' individual claims against Shelby County, the Board, Joe Ford[1] in his official capacity as Shelby County Mayor, and Jackson in his official capacity as General Sessions Court Clerk for dismissing Plaintiffs without due process of law. Plaintiffs also seek declaratory and injunctive relief and have a claim for punitive damages against Jackson in his individual capacity. (Kizer, Dkt. No. 76, at 18-19.) Both sides have filed Motions for Summary Judgment.

**II. Standard of Review**

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any

[1] A C Wharton resigned as Shelby County Mayor on October 26, 2009, following his election as Mayor of the City of Memphis, Tennessee. The Shelby County Commission appointed Joe Ford to serve the remainder of Wharton's unexpired term on November 17, 2009; and Ford took the oath of office on December 10, 2009. Because Plaintiffs' remaining claim is against the Shelby County Mayor is his official capacity, the Court has substituted Ford for former County Mayor Wharton as the proper party. See Fed. R. Civ. P. 25(d) (providing for automatic substitution of parties where a suit lies against a public officer in his official capacity).

genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the summary judgment motion opponent. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting . . . [his] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not

have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110–11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. See id. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**III. Analysis**

In their Motion for Summary Judgment, the Plaintiffs acknowledge that the Board categorized their appointed positions as "unclassified." (Plaintiffs' Motion for Summary Judgment at 5.) ("Pls.' Mot.") Plaintiffs assert, however, that this categorization was incorrect under the terms of the Act. (Id.) Plaintiffs argue that they were unable to seek review of their categorization and thus were terminated without the due process of law to which the Fourteenth Amendment entitles them. (Id. at 13.) Plaintiffs describe this as a "policy of inactivity" on the part of Lewis and the Board designed to prevent employees improperly designated unclassified from seeking review of their classification. (Id. at 12-13.)

By contrast, the Defendants argue in their Motion for Summary Judgment that Plaintiffs were well aware that the jobs they accepted were unclassified at the time of their appointments. (Defendants' Motion for Summary Judgment at 14.) (Defs.' Mot.) Defendants further note that, because it is uncontested that the positions were unclassified, Plaintiffs have no constitutionally recognized property interest in continued employment with Shelby County; thus, their suit should fail. (Id. at 16-19.) As a final proposition, Defendants argue that Plaintiffs received the process to which the Constitution entitles them, but chose instead to refuse legitimate requests for information rather than participate in the administrative review process. (Id. at 20-21.)

**A. Plaintiffs Cannot Establish That Shelby County Terminated Them Without Due Process of Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Local governments are considered "persons" for purposes of § 1983. Halloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). To state a claim under § 1983 against a municipality, a plaintiff must allege that the purported violation of a federal right occurred as the result of

an illegal policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Municipalities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id.

A governmental policy or custom, or a policy of inaction, must have been the moving force, directly causing the alleged violation. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694); see also Am. Postal Workers' Union v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004). This requirement ensures that the municipality is held liable for deprivations resulting from the municipality's decisions only, not for all acts of its agents under a theory of respondeat superior. Brown, 520 U.S. at 404; see also Gregory v. Shelby County, 220 F.3d 433, 441 (6th Cir. 2000). "Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

For purposes of the pending Cross-Motions for Summary Judgment, Defendants do not contest that Lewis and Jackson had the authority to establish Shelby County's policy with regard to its Merit System. (See Defs.' Mot. at 10-22 (focusing on the merits of Plaintiffs' claims and not contesting that the

relevant Defendants could and did make County policy).) The parties, therefore, squarely present the Court with the constitutional question of whether Defendants denied Plaintiffs the process due under the Fourteenth Amendment.

Plaintiffs are correct to focus their claims on their allegation that Shelby County misclassified their job positions. (Pls.' Mot. at 5.) Plaintiffs do no dispute that, at the time of their appointment and their termination, the Board categorized their positions as unclassified, and therefore unprotected, under the terms of the Act. (Pls.' Facts ¶¶ 2, 4, 6.) "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Where a state civil service system categorizes public employees as classified – that is, not subject to removal at will – employees have a state-law created, constitutionally protectable property interest in maintaining their current employment. Id. at 538-39. Conversely, unclassified employees have no property right in maintaining their jobs; and the State may terminate them summarily. See id. at 538-40; Roth, 408 U.S. at 578 (no constitutionally protected property interest in reappointment to a non-tenured position at

state university); Averitt v. Cloon, 796 F.2d 195, 200 (6th Cir. 1986) (no generally protected interest in maintaining a political appointment); Corbett v. Garland, 228 F. App'x 525, 527 (6th Cir. 2007) ("Unlike classified employees, unclassified employees have no property right to continued employment." (citation omitted)).

Plaintiffs contend that Shelby County left them with no opportunity to contest their alleged miscategorization as unclassified employees. (Pls.' Mot. at 12-13.) The undisputed facts in this case rebut Plaintiffs' assertions and demonstrate that they cannot succeed on their claims.

"[O]nce it is determined that the Due Process Clause applies," which it would if Plaintiffs were correct that they were properly categorized as classified employees, "the question remains what process is due." Loudermill, 470 U.S. at 541. As the Supreme Court has explained, "The essential requirements of due process . . . are notice and an opportunity to respond." Id. at 546. These requirements do not mean that Shelby County must provide elaborate procedures to avoid violating the Constitution's Due Process Clause. Instead, due process requires that the employee receive "oral or written notice" of the reason for his termination and "an opportunity to present his side of the story." Id. (citations omitted). The Sixth Circuit has held that a public employee with a property interest

in his employment must receive, at a minimum, "a pretermination opportunity to respond, coupled with post-termination administrative procedures." Silberstein v. City of Dayton, 440 F.3d 306, 315 (6th Cir. 2006) (internal quotation marks and citation omitted).

Here, it is undisputed that, before Plaintiffs' termination, Turner triggered a review of Plaintiffs' employment classification. (See Pls.' Facts ¶ 9; Defs.' Facts ¶ 11.) Human Resources Director Lewis asked Green to perform a preliminary review of Plaintiffs' job requirements and recommend whether a change in classification should occur. (Pls.' Facts ¶ 9.) Lewis sent Turner a letter inquiring about the specific reasons Turner believed supported his request to change Plaintiffs' status from unclassified to classified. (Pls.' Facts ¶ 29.) Turner did not respond to Lewis' request for more information. (Id. ¶ 32.) Turner chose instead to write another letter, making an argument and asking questions. (Id.) Turner, thus, effectively refused to participate further in the administrative review process. Stymied, Lewis did not issue a recommendation to the Board about whether to reclassify Plaintiffs; and the new General Sessions Court Clerk disappointed Plaintiffs. (Id. ¶ 1, 3, 5.)

Plaintiffs assert that this procedure did not comport with due process because they did not have an opportunity to present

their own arguments or evidence before Lewis or the Board. (Pls. Mot. at 13.) The record demonstrates, however, that Plaintiffs had the opportunity, but did not take it. The Act provides that one of the duties of the Board is "[t]o review the classification plan, compensation plan and personnel policies and to make recommendations" to the appropriate authorities for revisions. 1971 Tenn. Priv. Acts Ch. 110, § 6(3). As part of its review, the Board and its officers may hear all relevant evidence, including the "testimony of witnesses and the production of books and papers relevant to such investigation." 1971 Tenn. Priv. Acts Ch. 110, § 6(6).

The testimony of the actual employees affected along with that of the relevant appointing official would be among the most relevant evidence here. Lewis attempted to secure information from Turner before his term of office ended, but Turner chose instead to respond with arguments and questions of his own. (Pls.' Facts ¶ 32; Defs.' Facts ¶ 13; Lewis Dep. Ex. 37.) Plaintiffs had a statutory opportunity to be heard once the Board began its investigation. Plaintiffs knew they were subject to termination based on the present classification of their positions, but chose not to present any arguments or evidence apart from what Turner submitted in his initial request

for recategorization.[2] Contrary to Plaintiffs' assertions, review was available; the Act provides for hearings and taking proof; and Plaintiffs could have made any and all arguments to the Board.

Shelby County's procedure as to these Plaintiffs, allowing a pre-termination review of their employment classification, meets the core requirement of the Due Process Clause: notice of the reason for termination and "an opportunity to present [their] side of the story." Loudermill, 470 U.S. at 546. The Court, therefore, GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' claims for injunctive, declaratory, and monetary relief under § 1983 against Shelby County, the Board, and the individual Defendants in their official capacities.

### B. Jackson Is Entitled to Summary Judgment on the Claims Against Him Individually

Jackson has also moved for summary judgment on the Plaintiffs' claims against him in his individual capacity for violating their rights under the Due Process Clause. He asserts the defense of qualified immunity. (Defs.' Mot. at 23-25.) The Plaintiffs seek to establish that Jackson is liable for damages

[2] Plaintiffs were aware that Turner had asked Lewis to recategorize their job positions as classified, thereby triggering a review. (See Defs.' Facts ¶ 11; Kizer Dep., Dkt. No. 81, at 88-89; Turner Dep., Dkt. No. 81, at 44; Ryan Dep. at 35-36; Howell Dep., Dkt. No. 83, at 86 (explaining that Howell decided not to "do a thing" and "sue [Jackson]" instead)); see also Loudermill, 470 U.S. at 541 (notice is one of the two essential requirements of due process).

under § 1983 relying on the same undisputed facts they cite in support of their other claims. (Pls.' Mot. at 7-14.)

"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Merriweather v. Zamora, 569 F.3d 307, 314 (6th Cir. 2009) (internal quotation marks and citations omitted). The Sixth Circuit uses a three-step inquiry to determine whether a public official may successfully assert qualified immunity:

> First, [the Court] determines whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, [it] considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, [it] determines whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

Id. at 315 (internal quotation marks and citations omitted). A plaintiff must demonstrate the presence of all three factors to remove an official's qualified immunity. See id.

Plaintiffs' claims must fail because the Court has determined that the procedures offered in this case met constitutional standards of due process. Thus, there is no constitutional violation, and Plaintiffs fail to satisfy the first prong of the qualified immunity analysis. However, even

if there were a constitutional violation, Plaintiffs could not succeed in their individual claims against Jackson.

To remove qualified immunity, a plaintiff must also demonstrate that the constitutional right was clearly established and known to reasonable people. Merriweather, 569 F.3d at 315. It is undisputed that the Board categorized Plaintiffs' job positions as unclassified throughout the period of their employment. (Pls.' Facts ¶¶ 2, 4, 6.) Thus, when Jackson decided to disappoint Plaintiffs, he did so based on a job classification permitting Plaintiffs to be terminated at will. Under these circumstances, Plaintiffs cannot demonstrate that "it would have been clear to a reasonable person in [Jackson's] position that [his] conduct was unlawful." Corbett v. Garland, 228 F. App'x 525, 531 (6th Cir. 2007) (citations and internal quotation marks omitted).

A court undertakes its analysis in "the specific context of the case [at hand], not as a broad general proposition." Silberstein, 440 F.3d at 316 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 129 S. Ct. 808, 818 (2009)). Jackson received a list of unclassified positions from the Shelby County Human Resources Department and used that list to guide his appointments. (Defs.' Facts ¶ 14; see also Plaintiffs' Response to Defendants' Motion for Summary Judgment at 4 (noting that this fact is

undisputed).) Where a person's classified status is not clear to the appointing official, qualified immunity is appropriate. Accord Corbett, 228 F. App'x at 534. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Miller v. Admin. Office of the Courts, 448 F.3d 887, 897 (6th Cir. 2006) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). On this record, Jackson was not plainly incompetent, and he did not knowingly violate the law. He is entitled to qualified immunity. The Court GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' claims against Jackson individually.

**IV. Conclusion**

For the foregoing reasons, Defendants are entitled to summary judgment on all of Plaintiffs' remaining claims. The Court, therefore, GRANTS Defendants' Motion for Summary Judgment in full and DENIES Plaintiffs' Motion for Summary Judgment.

So ordered this 20th day of January, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE